SCHUMAN *v.* STATE.

Opinion delivered February 3, 1913.

1.  TRIAL—EVIDENCE—IMPROPER QUESTIONS BY COUNSEL.—When the court admonishes the jury not to consider an improper question asked a witness by counsel, it can not be claimed that the trial court permitted an improper examination of witnesses. (Page 367.)

2.  EVIDENCE—HEARSAY.—In a trial for murder alleged statements of deceased, who was defendant's wife, in regard to defendant's use of morphine are hearsay and inadmissible. (Page 367.)

3.  EVIDENCE—NONEXPERT TESTIMONY.—In a trial of defendant for murder nonexpert witnesses who have had opportunity for personal observation, and who state to the jury the facts upon which they base their opinion, upon the issue of defendant's sanity, may state what their opinion is. (Page 368.)

4.  EVIDENCE—EXPERT WITNESSES.—Graduate physicians, who have made a showing as to their qualifications, and who from reading and study have a knowledge of insanity superior to the ordinary nonprofessional witness, may testify on the subject of insanity as experts. (Page 368.)

5.  INSTRUCTIONS—SPECIFIC OBJECTIONS.—Although an instruction which provides that defendant must prove his defense by a preponderance of the testimony "to the reasonable satisfaction of the jury," imposes a greater burden on defendant than the law requires, still the granting of such an instruction is not a cause for reversal when the defendant has not objected specifically to the same and where the same phrase is used in an instruction given at defendant's request. (Page 369.)

6.  TRIAL—ARGUMENT OF COUNSEL.—It is proper for the trial court to rebuke counsel for defendant when in his argument to the jury he referred to the failure by the State to introduce the evidence of certain witnesses and stated "I charge it to the State that he knew their testimony was adverse to him because he did not bring them here to testify." (Page 370.)

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

*William C. Bouic,* for appellant.

1.  The conduct of the prosecuting attorney in recalling the witness Bluitt and questioning him as to specific acts, and particularly the question as to whether or not he had been convicted of petit larceny, etc., was an effort to discredit the witness before the jury by im-

proper questions, and was necessarily prejudicial; and the mild statement of the court was not sufficient to eradicate the injurious effect of it. *Id.* (*State* v. *Coulter*); 100 Ark. 561.

2. Likewise, his conduct in recalling the witness Coulter for the purpose of asking him if he was not in jail under indictment at a time previously testified to by him, was an effort to destroy his credit by insinuation which was improper and prejudicial. 133 Am. St. Rep. 780.

3. The testimony offered as to statements made by the deceased relative to the habits of appellant was competent and should have been admitted. 85 Ark. 536; 73 Ark. 500; 34 Ark. 735; 157 Mass. 180; 31 N. E. 961; 131 Am. St. Rep. 787.

4. The witnesses for the State on the question of defendant's sanity should have been required to state the facts upon which they based their opinions, as was the case with the witnesses for the defendant on that question.

5. Expert witnesses should be required to qualify as experts before admitting their opinions as to a defendant's sanity. In this case, one physician did not claim to know what insanity was; another based his opinion upon text books and not upon experience, and the third stated that he had never studied the subject of nervous diseases. The last named witness was erroneously permitted to testify as to defendant's sanity with no previous knowledge of him, from having seen him for about three minutes while he was being searched at the jail, and having then followed to his cell and observed him through a peep hole for about twenty-five minutes, having no conversation with him whatever. 1 Wharton & Stilles, Med. Jur. 879.

6. The court's instruction "A" was erroneous, in that it incorrectly placed the burden on the defendant. 1 Wharton & Stilles, Med Jur. 327; 160 U. S. 469; 61 Am. Dec. 410; 58 Neb. 225; 1 Gray, 61; 17 Mich. 9; 56 Neb. 309, 76 N. W. 754; 80 Am. Dec. 154.

*William L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

1. On cross examination it was proper for the prosecuting attorney to ask the witness if he had ever been convicted of an infamous crime, if he had any reasonable ground to believe that he had been so convicted. 74 Ark. 397, 400. If there was any error in asking the question objected to, and that is not conceded, it was harmless error and was cured by the court's admonition. The testimony was admissible for the purpose of testing the credibility of the witness. 44 Ark. 122; 63 S. W. (Tex.), 312; 98 Am. St. Rep. 932, 933; 100 Ark. 321, 324; *Id.* 199, 202; 103 Ark. 87.

2. The withdrawal of the request to recall the witness Collier, and the admonition of the court to the jury were sufficient to eliminate any error contained in the statement as to his being under indictment.

3. The evidence offered as to statements of the deceased as to the habits of the defendant was pure hearsay and clearly inadmissible. 73 Ark. 152, 158; 12 Cyc. 429; 14 Cent. Dig. §§ 937, 947; 6 *Id.* § 415 (1).

4. There was no error in permitting the nonexpert witnesses offered by the State to testify as to defendant's sanity. 54 Ark. 588; 61 Ark. 241; 38 L. R. A. (Ga.) 721.

5. The court did not err in permitting the expert witnesses offered by the State to testify as such. 64 Ark. 523; 39 L. R. A. (Tex.), 306.

6. Instruction "A" was correct. This court has long held to the rule that a defendant who pleads insanity must prove it by a preponderance of the testimony. 40 Ark. 523; 50 Ark. 330, 333; *Id.* 511, 519; 54 Ark. 588, 602.

SMITH, J. The defendant, Clarence A. Schuman, was indicted by the grand jury of Garland County at its September term, 1912, for murder in the first degree. Upon the trial of said cause, the defendant admitted the killing and as a defense plead insanity at the time of the killing, produced by the constant and excessive use of morphine. The proof showed that the defendant and

the deceased were man and wife, but at the time of the killing were living apart, and that on the day of the tragedy, the appellant was in the home of a neighbor of the deceased, where he was engaged in staining the floors; that he went to his work unarmed and while there and prior to the time of the shooting, he saw the deceased but continued his work until about two hours later, when he saw deceased in her back yard, and he then went into the house where he had been working and secured a pistol which was lying on the dresser and went into the yard of her house and shot her several times. The proof tended to show that prior to the killing, defendant had made threats against the life of the deceased, and he himself stated after the killing that he told his wife, after their marriage, that if she ever left him he would kill her. When defendant advanced upon the deceased with the gun and she saw that he was about to do her violence, she begged him to spare her life and said to him, "Sweetheart, don't shoot, I will do anything you want;" but he said, "No, you have told me that before and I do not believe you." It appears that appellant and his wife had been married only about a year, during which time they had had quite a good deal of trouble, and it had become necessary for her to have him confined in jail under a peace bond, and she had commenced an action for divorce against him.

Defendant did not question the character of the deceased, but it is conceded that she was living honorably, and made an honest living as washer woman, at which employment she was engaged when killed. No attempt is made to justify this killing, but the defendant seeks to excuse himself by his plea of insanity, and it may be said that if he can not be excused upon that plea no justification whatever can be claimed. The jury returned a verdict, finding the defendant guilty of murder in the first degree, and an appeal was taken from the judgment of the court pronounced thereon.

The motion for a new trial assigned many alleged errors for the reversal of the case, but those now relied

upon are as follows: First, in permitting an improper cross examination of defendant's witness, Charles Bluitt; second, likewise an improper cross examination of defendant's witness, Collier; third, in refusing to permit defendant to prove certain statements of the deceased, concerning defendant's addiction to the use of morphine, immediately preceding the killing; fourth, in permitting nonexpert witnesses, offered by the State, to testify as to the sanity of the defendant; fifth, in giving and refusing certain instructions; sixth, in failing to admonish the prosecuting attorney and rebuke him for interrupting counsel for the defendant and because of certain alleged improper remarks of the court when called upon so to do.

The cross examination of the witness Bluitt, complained of consists of these questions and answers:

Q. In March, 1911, were you convicted of petit larceny?

*Mr. Bouic:* I object, because the record shows that he was not convicted and Mr. Wood knows that he was not.

*The Court:* Of course, if there is no evidence to base it on.

*Mr. Wood:* I want to ask if he was not convicted and afterwards the judge set it aside on account of his being sick.

A. No, sir.

*Mr. Bouic:* I wish the court to admonish the jury and I want to save an exception to the question, because the records show that the charge was dismissed and he was acquitted of that charge.

*Mr. Wood:* That is what the record shows.

*The Court:* The jury will not consider that.

*Mr. Bouic:* I want to save an exception to the fact that the prosecuting attorney after asking the question stated that the record shows that it had been dismissed, and he had been acquitted, and the question was improper and was asked for the purpose of biasing and prejudicing the jury against the witness.

*Mr. Wood:* Let the record show, too, that I wanted to—

*Mr. Bouic:* I object to that statement in the presence of the jury about it.

*Mr. Wood:* I want the record to show that I wanted to show the state of facts as indicated by the question.

*The Court:* The court will sustain the objection to a further examination on that particular point.

If this question was an improper one, it was excluded from the jury and the jury admonished not to consider it. But it was held in the case of *Turner* v. *State,* 100 Ark. 199, that where even an accused became a witness in his own behalf, he may be impeached on cross examination by questions which show that he had been formerly convicted of an infamous crime.

The error complained of in the cross examination of the witness Collier is as follows: After the witness Collier had left the stand the following colloquy took place:

*Mr. Wood:* I would like to call Mr. Collier back and ask him if he is under indictment now.

*Mr. Bouic:* We will concede that. I object to that statement being made in the presence of the jury.

*Mr. Wood:* We will withdraw the request.

Whereupon the court said: "The jury will not consider that."

The witness had admitted in his direct examination that he had been confined in jail since defendant had been arrested, this proof being made upon the part of the defendant to show that the witness had had an opportunity to observe the manner of the defendant, and to testify to his addiction to the use of morphine. If there was any error in the question, it was certainly removed by the withdrawal of the question and the admonition of the court.

Defendant offered to prove certain statements, alleged to have been made by his wife in regard to his use of morphine, but the court excluded these statements upon the ground that they were mere heresay. The state-

ments of the deceased upon that subject were as much within the inhibition of the hearsay rule as such statements would have been upon the part of any other person, besides there was much undisputed evidence show-ing the defendant's habit in the use of this drug. A number of witnesses, both upon the part of the State and the defendant, were permitted to express their opinion upon the question of defendant's sanity, but this was done only after a showing of their association with him, and their opportunity for observation, and a statement of facts upon which their opinions were based. It has been held that where a nonexpert witness has had opportunity for personal observation and states to the jury the facts upon which he bases his opinion, upon the issue of another's sanity, he may state what that opinion is. *Byrd* v. *State,* 76 Ark. 288; *Shaeffer* v. *State,* 61 Ark. 241; *Green* v. *State,* 64 Ark. 523.

The fifth assignment of error relates to the admission of the evidence of certain physicians as experts. The record shows that several doctors were permitted to testify as experts, and to express their opinions as to defendant's sanity, but in each case the court required a *prima facie* showing of their qualifications to so testify. Some of these professional witnesses displayed a greater knowledge and a wider experience than others, but this knowledge and experience was proper to be considered by the jury, in determining the weight to give to the evidence of each of these witnesses. It was no doubt true that the evidence of some of these experts carried greater weight with the jury than did that of others; but these experts were all graduate physicians and sufficiently qualified to be allowed to testify as experts. We think no useful purpose would be served here by setting out the evidence which determined the court in deciding to permit the jury to hear their evidence. It is sufficient to say that they testified that as a result of their reading and study and observation and experience, they had a knowledge of the subject of insanity superior to that of the ordinary nonprofessional witness; and these wit-

nesses were shown to have entertained the wide difference of opinion usually found in these cases.

The court gave the jury instructions numbered consecutively from 1 to 21 upon the question of homicide generally, and instructions lettered from "A" to "N" consecutively, declaring the law in regard to the defense of insanity; and the defendant objected and excepted to the giving of each of these instructions, but these exceptions evidently were preserved as a matter of caution, as only a few of the instructions are now complained of. These instructions set out fully and clearly the law of the subjects which they discuss, in accordance with the decisions of this court in numerous cases, and upon the whole present a fair, clear and correct declaration of the law upon the subject of insanity as a defense to the charge of homicide. Of these instructions the first one given by the court, upon the subject of insanity, appears to be more objectionable than any other one, in fact the only one to which any serious objection can be made, or was made. It is to the following effect: "A. Insanity is set up by the defendant in this case as a defense to the charge against him in the indictment. The law presumes every person of mature years to be of sound mind, and when a defendant interposes the defense of insanity to a crime charged against him, the burden is on such defendant to prove such defense by a fair preponderance of the testimony to the reasonable satisfaction of the jury." The phrase "to the reasonable satisfaction of the jury," standing by itself, imposes upon the defendant a greater burden than that required by the law. But there was no specific objection to this instruction, and in the instruction given at the defendant's request the same phrase was used. The phrase, under the circumstances, and in the absence of objection thereto, would be treated as merely redundant, for the court had told the jury that the defense was complete when established by a fair preponderance of the testimony, and this would necessarily be to the reasonable satisfaction of the jury. The jury could not be expected

to require for their satisfaction more in the way of proof than was required by the law, but the expression did not explain what had been previously said, and should not have been used in either the court's own instruction or in the one given at the request of the defendant, and no doubt it would have been stricken out had the matter been called to the attention of the court.

The seventh and last assignment of error consisted in the alleged improper failure of the court to rebuke the prosecuting attorney for interrupting defendant's counsel in his argument. During the said argument the attorney for the defendant made reference to the failure of the State to introduce the evidence of certain ladies and stated: "I charge it to the State that he knew their testimony was adverse to him because he did not bring them here to testify." The court remarked, "I think this argument is improper, and ask you to abstain from it," whereupon counsel said, "If the court will permit me, I will ask the court this question, "Why are they not here; why did he not bring them here; what would be your conclusion by reason of their failure to bring them here; what would be your answer by reason of their failure to be here?" whereupon the prosecuting attorney objected and said that the statement is not true and there is no foundation for it and no evidence for it and I ask the court to rebuke counsel for having made the argument," whereupon the court said: "Mr. Bouic, that argument is highly improper and the court is surprised that the prosecuting attorney has not objected before," and when the attorney of the defendant offered to state to the court the reason for making his argument and to show justification for it, the court cut him off by saying: "Mr. Bouic, I have ruled that argument out and there is no use of your saying any more." We think that no error was committed here. The argument was improper, and the court should not have permitted it to have been made. Its effect was to charge that the State had suppressed evidence, by failing to offer it, which would have been unfavorable. There was no reason why

the defendant might not have offered this evidence, if it was known to be unfavorable to the State's contention,, but at any rate it is not shown what this evidence would have been, and the defendant had no right to make the argument which was being made. It appears that counsel was making a very earnest argument in defendant's behalf; but that the court used no more firmness than was reasonably necessary to compel counsel to desist from his improper argument. There was nothing in the court's remark to belittle the defense, nor was there anything contemptuous to counsel; upon the contrary, there was a mere statement, upon the part of the court, that the accusation of the counsel against the prosecuting attorney was improper and should not have been made. Upon careful consideration of the whole case we are of opinion that the defendant had a fair and impartial trial, and that there were no errors of a substantial nature, and that the law of the case was correctly declared, and the judgment is accordingly affirmed.