DEWEIN *v.* STATE.

Opinion delivered September 27, 1915.

1. CHANGE OF VENUE—INSANITY—WRIT OF ERROR CORAM NOBIS.—When the question of the insanity of a convicted person is to be submitted to the jury on writ of error *coram nobis,* after conviction and sentence, the petitioner is entitled to a change of venue as in other criminal cases.

2. CHANGE OF VENUE—CRIMINAL CASES—QUALIFICATION OF WITNESSES—DISCRETION OF COURT.—In a criminal case, when a petition for a change of venue and the supporting affidavits are in the form prescribed by the statute, the only inquiry upon which the trial court may enter is as to the qualifications of the supporting witnesses, and if they are within the qualifications prescribed by the statute, the court is without further discretion, and the order for a change of venue must be made.

3. CHANGE OF VENUE—SUPPORTING WITNESSES—QUALIFICATIONS—DISCRETION OF COURT.—In passing upon the credibility of witnesses supporting a petition for a change of venue in a criminal case, the witnesses may be called before the court and examined, and the court may inquire into the means of knowledge of the witnesses, and as to the probability of the petitioner being able to obtain a fair and impartial trial, but only for the purpose of reaching a conclusion upon the credibility of the supporting witnesses.

4. WITNESSES—CREDIBILITY.—A credible person is one who has the capacity to testify on a given subject, and is worthy of belief; and one who lacks knowledge on the subject under investigation is not

a credible person to be accepted as worthy of belief in that particular inquiry.

5. CHANGE OF VENUE—SUPPORTING WITNESSES—"CREDIBLE PERSONS."— Kirby's Digest, § 2318, provides that a petition for a change of venue in a criminal case must be supported "by the affidavits of two credible persons who are qualified electors, actual residents of the county, and not related to the defendant in any way." In overruling a motion for a change of venue, the trial judge said, "The witnesses are reputable citizens of Saline County, and in passing upon the motion and in considering their testimony, only their knowledge of the conditions will be considered." *Held,* in using the word "reputable" the trial judge did not mean to declare a finding that the witnesses were "credible persons" within the meaning of the statute.

6. CHANGE OF VENUE—SUPPORTING WITNESSES—CREDIBILITY—FINDING OF COURT.—A petition for a change of venue was filed in a criminal proceeding, and was denied by the trial court. *Held,* under the facts, that the court did not err in finding that the supporting witnesses to the petition for a change of venue, were lacking in sufficient knowledge and rested their conclusions upon erroneous premises to the extent that they would not be deemed credible persons within the meaning of the statute.

7. TRIAL—OPINION OF JUROR—DISQUALIFICATION.—In a proceeding to try the issue of defendant's sanity at the time he committed a murder, for which he had been convicted, certain veniremen, when called, stated that, notwithstanding the opinions they had formed as to the original question of appellant's participation in the crime, they were open-minded as to the question of his sanity or insanity at the time of the trial, and that they could give him a fair and impartial trial on that issue; *Held,* they were competent jurors and that the trial court did not err in overruling appellant's challenges.

8. EVIDENCE—NON-EXPERT WITNESS—INSANITY.—The testimony of non-expert witnesses as to the sanity of defendant is admissible only after a showing of their association with him and their opportunity for observation, and a statement of the facts upon which their opinions were based.

9. INSANITY—PROOF OF—SUFFICIENCY OF THE EVIDENCE.—In a proceeding to determine the sanity of defendant at the time of a trial, at which he was convicted of the crime of murder, *held,* the evidence was sufficient to warrant a finding by the jury that the defendant was sane.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*Charles P. Johnson, Jones & Owens* and *Gardner K. Oliphint,* for appellant.

1.   The court ought to have granted the motion for change of venue. Its denial was an abuse of discretion for which the cause should be reversed. The two supporting witnesses, whom the court found to be "reputable citizens of Saline County" and that "there is no question raised as to their credibility," testified to a state of facts showing their knowledge of the condition of the minds of the inhabitants of all parts of the county, and that it was such that appellant could not obtain a fair and impartial trial on the issue of insanity in that county. Kirby's Dig., § 2317; 98 Ark. 141; 71 Ark. 180; 85 Ark. 574; *Id.* 536; 83 Ark. 36; 76 Ark. 276; 95 Ark. 241; 101 Ark. 441; 107 Ark. 31; 100 Ark. 218; 37 S. E. (W. Va.) 627.

2.   The court erred in overruling appellant's challenges for cause against certain veniremen, thereby forcing him to exhaust his peremptory challenges and to submit to veniremen being taken on the jury who were disqualified by reason of opinions formed as to his being guilty of murder, for which he had been tried and convicted.   69 Ark. 322; 102 Ark. 183; 140 Am. St. Rep. 1086; 45 Ark. 165; 13 Ark. 720; 19 Ark. 156; 1 Bishop Cr. Proc., § 910; 8 Cal. 359; 40 Cal. 268; 66 Ark. 55; 113 Ark. 301; 3 U. S. 518; 9 Cal. 298; 2 N. H. 349; 10 Yerg. 241; 5 Ga. 85; 3 Scam. 412; 69 S. W. 778; 3 Humph. 377; 6 Baxt. 474; 12 Lea 443; 15 Lea 545; 52 S. W. 997; 60 S. W. 968; 49 S. W. 83; 113 N. C. 711, 18 S. E. 515; 63 L. R. A. 814, 815; *Id.* 872; 3 Bl. Com. 374; 27 N. W. 539; 60 Ark. 221; 70 Ark. 132; 56 Ark. 404; 21 Ark. 336; 61 Ark. 359; 85 Wis. 400.

3.   The verdict is contrary to the law and the evidence, so much so as to shock the sense of justice of a reasonable person. The proof of appellant's insanity at the time of his trial for murder is clear and overwhelming, and opposed thereto was only the testimony of lay witnesses, many of whom were shown by their own testimony to be biased and prejudiced against appellant and all of whom were ignorant of the effect upon the mind of

the disease with which he was afflicted, and the testimony of one physician who, by his own admission, had made no examination of him, and had written the Governor asking that appellant's sentence be not commuted. Such testimony amounted to no contradiction of the positive testimony of the experts who fully qualified themselves as such. 70 Ark. 385; *Osborne* v. *Hittson,* 118 Ark. 349, 176 S. W. 319, 320; 70 Ark. 116; 3 Witthaus & Becker Med. Jur. 182; 177 S. W. (Mo.) 362, and authorities cited; 101 Ark. 532; 53 Ark. 96; 67 Ark. 514; 80 Ark. 396; 96 Ark. 504; *Id.* 37, 131 S. W. 44, Am. Cases 1912 B, 383.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. It is only for a gross abuse of discretion, amounting to a denial of justice, that this court will reverse on account of the trial court's refusal to grant a change of venue. 79 Ark. 594; 103 Ark. 352; 94 Ark. 169.

2. There was no error in the court's rulings on the qualifications of jurors. Appellant was being tried, not for murder, concerning his guilt of which they stated that they formed opinions, but upon the issue as to whether or not he was insane at the time the murder was committed, and upon that issue they stated that they could give him a fair and impartial trial.

3. The evidence sustains the verdict. The non-expert witnesses introduced by the State had all had the opportunity for personal observation of the appellant, and stated the facts upon which they based their opinions. 106 Ark. 362, 368.

McCULLOCH, C. J. Appellant, Clarence Lee Dewein, was convicted in the circuit court of Saline county, Arkansas, on April 25, 1914, of the crime of murder in the first degree, and on appeal to this court the judgment of conviction was affirmed. **114 Ark. 472, 170 S. W. 582.** The crime which he was adjudged to have committed consisted of the killing of one L. H. Thompson, an aged man, in the town of Benton, and the proof showed that it was committed by appellant and one Joe Strong,

and that they killed Thompson for the purpose of robbing him of his money. Both of the men were convicted and sentenced to death by electrocution. Subsequent to the affirmance of the judgment by this court, appellant filed in the Saline Circuit Court a petition for a writ of error *coram nobis,* praying for an inquiry into the question of his sanity at the time of the trial, and that the judgment of conviction be set aside on the ground that he was insane at the time of the trial and without capacity to conduct his defense. The writ was duly issued by the judge of the circuit court, and at the next term there was a trial of the issue before a jury, which resulted in a verdict establishing appellant's sanity at the time of his conviction. An appeal has been duly prosecuted to this court.

(1)   Appellant presented to the trial court a petition for a change of venue. The petition was in the form prescribed by statute and was supported by the affidavits of two qualified electors of the county, who, it is claimed, were credible persons. The statute provides that a petition for a change of venue in a criminal case must be supported "by the affidavit of two credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way." Kirby's Digest, § 2318. When the question of insanity of a convicted person is to be submitted to the jury on writ of error *coram nobis,* after conviction and sentence, the petitioner is entitled to a change of venue as in other criminal cases. *Adler* v. *State,* 35 Ark. 517. The supporting affiants were called before the court to testify on an inquiry as to their credibility, and they were examined and cross-examined at length. The court overruled the motion for change of venue, and in doing so the trial judge said that "the witnesses are reputable citizens of Saline County, and in passing upon the motion and in considering their testimony, only their knowledge of the conditions will be considered."

(2-3)   In a criminal case, when a petition for a change of venue and the supporting affidavits are in the

form prescribed by statute, the only inquiry upon which the trial court may enter is as to the qualifications of the supporting witnesses; and if it be found that they come within the definition of the statute, as "credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way," the court has no further discretion and the order for a change of venue must be made. The court may, however, in order to pass upon the credibility of the supporting witnesses, have them called before the court and examined. That is not the exclusive method of passing upon the question, but it is the familiar one more often pursued in this jurisdiction. The court may inquire into the means of knowledge of the witness and as to the probability of the petitioner being able to obtain a fair and impartial trial, but only for the purpose of reaching a conclusion upon the credibility of the supporting witnesses.

(4-5)　It is insisted, in the first place, that the trial court found as a matter of fact that the witnesses were credible persons, and that his order overruling the motion for change of venue was inconsistent with that finding. The argument is based upon the statement made by the trial judge to the effect that the witnesses were "reputable citizens of Saline County;" but the remainder of the sentence uttered by the court at the time shows that this statement was not meant as a finding that the witnesses were credible persons within the meaning of the statute, for the judge said in the same connection that there was no question raised as to the credibility of the witnesses "except as to their knowledge as to the condition of the minds of the inhabitants in the county." It is true that the word "reputable" is laid down by the lexicographers as synonymous with the word "credible," but the two words are not synonymous in the fullest sense and can not be treated as synonymous when considered in interpreting our statute on the subject of change of venue. A person may be of good repute in the community in which he lives, and yet, by reason of a reckless and inaccurate oath, based upon insufficient

knowledge, fail to be a credible person within the meaning of the statute. A credible person is one who has the capacity to testify on a given subject and is worthy of belief; and one who lacks knowledge on the subject under investigation is not a credible person to be accepted as worthy of belief in that particular inquiry. So we are of the opinion that the trial judge did not mean to declare a finding that the witnesses were credible persons within the meaning of the statute, and that we must test the correctness of the court's conclusion on that issue by a review of the record as presented to the judge upon the inquiry as to their credibility.

(6)  Now, the witnesses did not pretend to have a general knowledge of the state of the mind of the citizens of all portions of the county. Nor did their knowledge extend to the state of mind of the people with reference to the issues to be presented on the trial. On the contrary, they appear to have rested their conclusions entirely upon the fact that there was a widespread belief in the minds of the inhabitants of the locality, of which the witnesses were advised, that appellant was one of the parties who had robbed and slain L. H. Thompson, and the supporting witnesses seem to have drawn the conclusion therefrom that those who shared that belief were necessarily prejudiced to the extent that appellant could not get a fair trial upon the issue as to his sanity or insanity at the time of his trial. Neither of the witnesses gave any evidence whatever of any widespread prejudice against appellant, further than the inference to be drawn from the fact of belief in the established participation of the appellant in the killing of Thompson. It did not necessarily follow that because the belief was general that appellant had participated in the killing of Thompson, that there existed in the minds of the inhabitants such prejudice as would prevent his obtaining a fair and impartial trial in the county. On the contrary, it is fair to assume that an acceptance of the adjudged fact of appellant's participation in the killing did not create in the minds of intelligent people such a prejudice

as would prevent him obtaining a fair and impartial trial
on the issue as to his sanity at the time of conviction.
It is shown, too, that there was an effort made to secure
a pardon, and that a large number of the prominent citi-
zens of the county presented a protest against executive
interference; but that protest, and the agitation which
brought it about, was not shown to have been so general as
to prevent appellant from obtaining a fair and impartial
trial. Upon the whole, we can not say, from a perusal of
the testimony, that the court erred in finding that the
supporting witnesses to the petition for a change of venue
were lacking in sufficient knowledge and rested their con-
clusions upon erroneous premises to the extent that they
would not be deemed credible persons within the meaning
of the statute. In passing upon a question of this kind,
much is left to the fair discretion and judgment of the
trial court, and each case must be determined by its own
particular facts. *Ford* v. *State,* 98 Ark. 139. We fail to
find that there is any abuse of the court's discretion in
this case, and the order refusing the change of venue will
not be disturbed.

The next ground urged for reversal is that the court
erred in passing on the qualifications of veniremen. There
were numerous exceptions in that regard, and appellant
exhausted all of his challenges, so that if it be found that
incompetent jurors were taken upon the jury, or that ap-
pellant was compelled to exhaust any of his peremptory
challenges on incompetent veniremen, a reversal of the
case must follow. It would serve no useful purpose to
set out at length the testimony of the veniremen on their
*voir dire,* but it is sufficient to say that the only question
as to their competency relates to the matter of opinion on
the question of the guilt or innocence of appellant on the
original trial. Many of the veniremen stated that they
had formed and expressed opinion as to the guilt of ap-
pellant's participation in the killing of Thompson, but
all of them stated that they had no bias or prejudice
against him or any opinion as to the question of his sanity

· at the time of the trial and could give him a fair trial on that issue.

(7)    Now, the question under investigation at this trial did not relate to the matter of appellant's participation in the killing of Thompson, or even to the question of his sanity at the time the killing occurred, but the inquiry was to be confined solely to the question of appellant's sanity or insanity at the time of the original trial. Therefore, an opinion formed and expressed by a venireman concerning the question of appellant's participation in the killing did not necessarily create such a prejudice as would prevent him from sitting as a juror. Nor was it such an opinion as rendered him incompetent as a juror. All of the veniremen stated that, notwithstanding the opinions they had formed as to the original question of appellant's participation in the crime, they were open-minded as to his sanity or insanity at the time of the trial, and could give him a fair and impartial trial on that issue. They were therefore competent jurors, and the court did not err in overruling appellant's challenges.

It is insisted, finally, that the testimony adduced in the trial established by overwhelming preponderance, if not beyond dispute, that appellant was suffering from mental disease which incapacitated him from knowing the difference between right and wrong, and that he was insane, not only at the time of the trial, but at the time of the killing of Thompson. Appellant was about twenty years of age at the time the killing occurred, and the evidence adduced by his counsel tends to establish the fact that his weak mentality resulted from hereditary syphilis, and that he was mentally incapable from early childhood. There is a great mass of testimony along that line, consisting mainly of the testimony of experts who had treated appellant and examined him for the purpose of testifying in the case. The testimony was, in other words, abundant, and it is insisted by counsel for appellant that it was in fact undisputed, and that the testimony adduced by the State was incompetent and without any probative force. Appellant was born and reared in the State of

Illinois, and had only been in Saline County a few months before the crime was committed. He was confined in jail from the time of his arrest up to the date of trial, and the witnesses introduced by the State testified with reference to their knowledge resulting from observation during the confinement in jail and during the trial of the cause, which lasted several days. There were quite a number of those witnesses, however, who testified that they observed appellant closely during the trial, and, some of them, while he was in jail, and they all expressed the opinion that he was sane. For instance, the sheriff of the county testified that he had observed appellant's conduct while confined in jail and watched him closely during the trial and observed his demeanor throughout the progress of the trial, and particularly while he was on the witness stand. He testified that appellant appeared to be a normal man and took care of himself quite well on the witness stand. Other witnesses who were present testified that appellant maintained himself well as a witness in his own case, even under the searching cross-examination, to which he was subjected. One of the State's witnesses was a physician, who had opportunities for observing the defendant's conduct while in jail, but it is not sought to qualify him as an expert witness.

(8)     There is some conflict in the authorities as to the competency of non-expert witnesses on the subject of insanity, and of the probative force of such testimony. This court is committed to the rule that before the opinions of non-expert witnesses on that subject can be made admissible in evidence, "the specific facts upon which the opinions are based must first be stated by the witnesses, or their testimony must show that such intimate and close relations have existed between the party alleged to be insane, and themselves as fairly to lead to the conclusion that their opinions will be justified by their opportunities for observing the party." *Shaeffer* v. *State,* 61 Ark. 241. A further statement of the rule is found in the recent case of *Schuman* v. *State,* 106 Ark. 362, where we held that the testimony of non-expert witnesses as to the sanity of the

defendant was admissible only "after a showing of their association with him and their opportunity for observation, and a statement of facts upon which their opinions were based." The witnesses in this case, who were permitted to testify, gave a statement as to the circumstances under which they observed the conduct of appellant, and they undertook to describe the manner in which he conducted himself during the trial and while he was on the witness stand. They showed sufficient opportunity for observing the appellant and forming an opinion as to his mental capacity, which entitled their testimony to go to the jury. The weight of the testimony was, of course, a question for the jury, but we can not say that the testimony of those witnesses was entirely without probative force.

(8) It is argued that the type of mental disease under which appellant labored was such as to make it impossible for a nonexpert to discover its presence by ordinary observation. But we think that was all a question for the jury to pass on, whether it was true that appellant was mentally incapacitated to the extent which the testimony of the expert witnesses tended to show, without it being observable by nonexpert witnesses who took careful note of appellant's actions and demeanor during the progress of the trial. There are numerous opinions of this court which deal with the question of insanity and mental incapacity, but we find none of them which warrant us in saying that the testimony of the witnesses introduced by the State in this case was without substantial force, and that the judgment should be reversed as being without any evidence to support it. We will not undertake to say where the preponderance of the evidence appears to us to be, for it is sufficient here if we find that there is evidence of a substantial nature that appellant was in fact sane at the time of the trial which resulted in his conviction of the crime of murder.

Being of the opinion that the evidence was sufficient to warrant the verdict, and that there was no error com-

mitted by the court in the progress of the trial or in overruling the motion for a change of venue, it becomes our duty to affirm the judgment, and it is so ordered.