## BROWN *v.* STATE.

### Opinion delivered April 26, 1920.

1. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Under Kirby's Digest, § 2384, a conviction can not be had on the uncorroborated evidence of an accomplice, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

2. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence in a prosecution for robbery *held* to corroborate the testimony of an accomplice.

3. CRIMINAL LAW—NEW TRIAL—DISCRETION OF COURT.—It was within the trial court's discretion to refuse a new trial where conviction was had upon testimony of an accomplice, though the accomplice subsequently retracted his testimony; the testimony of such accomplice being corroborated in several important details and the court having heard the witnesses and seen their demeanor.

4. CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—In a prosecution for robbery, where the proprietress of a hotel where defendant took his meals testified that he was at her hotel at a time when the prosecution contended that he was on his way to to the robbery, a statement by the prosecuting attorney in his closing argument that he knew all about the woman, that he could not tell what he knew but wished the jury knew, suggested an unfavorable inference as to her character, not supported by evidence, and was prejudicial.

Appeal from Nevada Circuit Court; *George R. Haynie,* Judge; affirmed.

STATEMENT OF FACTS.

George Brown was indicted, tried before a jury, and convicted of the crime of robbery. The facts as shown by the State briefly stated are as follows:

Ben Baker lived in Nevada County, Arkansas, about eleven and a half miles from Hope, Arkansas. He is a single man and his aged mother lives with him, and they lived there on November 23, 1919. On Sunday night, November 23, 1919, two men went into Baker's house and threw their guns on Baker and his mother and then tied them. They told them that they knew that Baker had a lot of money and forced him to give them $400 of his own money. They searched the house and found $400 aditional, a part of which belonged to Baker and the remainder to his mother. One of the men participating in the robbery was a slender man and the other was heavy set. The heavy set man did the talking. Both of the men looked like their faces were blacked, and they had cloths tied over their mouths. One of the men took out his knife and threatened to cut Baker's throat in an effort to make him give up his money. There was smut on Baker's neck where the robber's hands had touched it. Baker's mother was seventy-nine years old, and they tied her with wire. Baker could not recognize the men because they had smut on their faces and had tied thick cloths on their faces above their mouths. There were tracks on the outside of the house which looked like somebody outside had stood there while the robbers were in the house. A short time after the robbery occurred Baker had a conversation in the town of Hope with the accused George Brown. He and another man were discussing with Brown about having carried some men to Baker's house on the night of the robbery. Baker testified that George Brown said that they ought not to blame him for carrying the men down there and him not knowing where they were going. We here quote from the testimony of Baker as to what Brown said to him on that occasion:

"Here a while back, a short time, I carried a bunch out in the country; I didn't know where they was going; first thing I knew they had a suit case or two of whiskey in the car and was drinking it, and I didn't know what was up and had to bring them back to town drunk."

The testimony of Baker as to what occurred at the scene of the robbery was in all respects corroborated by that of his mother.

Harry Simmons made a confession and testified on behalf of the State. According to his testimony Arthur Neal, Joe Ed Smith, George Brown and himself robbed Ben Baker and his mother. Joe Ed Smith and Simmons were working at the Brown Gin Company in Hope, and Arthur Neal lived in the town there, painting. George Brown operated a car for hire in the town of Hope. On the Sunday night that Baker's house was entered and the robbery occurred, Joe Ed Smith, Arthur Neal, George Brown and Harry Simmons got in George Brown's car and started to Baker's for the purpose of robbing him. They knew that he had a considerable sum of money. Brown and Neal sat on the front seat, Brown driving the car, and the other two sat on the back seat. They were all dressed in blue overalls. All the parties put smut on their faces in order to disguise themselves. It was dark when they got to Baker's house. George Brown and Joe Ed Smith both had pistols and went into the house. After the robbery was over they got into the car and went back to Hope. They ran the car pretty fast, and it took about forty minutes to get there. All the parties except George Brown got out of the car and went up to the light plant where they washed their hands and faces and pulled off their overalls. Joe Ed Smith had on a soldier's uniform.

The engineer of the light plant at Hope heard about the robbery on Tuesday after it happened. According to his testimony on the Sunday night preceding the robbery, being the 23d day of November, three men came to the light plant. Two of them had on overalls and the other one was in a soldier's uniform. One of the men was

pretty black and smutty. They asked for water to wash their faces. There was nothing about them to attract the witness' attention, and he was not able to identify them. He knew George Brown, and knew he was not one of the men.

A deputy sheriff was also a witness for the State. He went to the scene of the robbery on the next day after it occurred and found the things in the house piled in the middle of the floor as if the drawers and trunks in the room had been emptied. There was a rag with the things which had some smut on it. There were tracks behind the smokehouse where someone had evidently stood. Arthur Neal had on shoes at the time he was arrested and the tracks looked like tracks which his shoes would make. Brown had a pistol in a dresser drawer in his room at the time he was arrested. He tried to keep the deputy sheriff from taking the pistol with him. The deputy sheriff went and got the overalls which Harry Simmons and Joe Ed Smith said they had on the night of the robbery. They were blue overalls and jumpers.

The testimony of other witnesses tending to corroborate the testimony of Harry Simmons will be stated or referred to in the opinion.

The defense of the accused was an alibi. He denied that he left Hope on the Sunday night that the robbery occurred, in an automobile, and proved by several witnesses that at about the time the automobile is said to have left for Baker's house that he was at a hotel in Hope and that he stayed there and ate supper.

The jury returned a verdict of guilty and fixed the defendant's punishment at three years in the State penitentiary. From the judgment rendered, the defendant has duly prosecuted an appeal to this court.

*J. O. A. Bush* and *Steve Carrigan,* for appellant.

1. Harry Simmons was an accomplice, and the testimnoy of the accomplice fails of corroboration. 101 Ark. 155; 110 *Id.* 538; 117 *Id.* 296.

2. The remarks of the prosecuting attorney were prejudicial. 91 Ark. 576; 94 *Id.* 514; 94 *Id.* 548; 100 *Id.* 232; 106 *Id.* 449; *Ib.* 131; 109 *Id.* 130; 110 *Id.* 226; 112 *Id.* 236; 121 *Id.* 87; 62 *Id.* 126; 72 *Id.* 427, 461; *Doran v. State,* 141 Ark. 442; 58 Ark. 481.

3. A new trial should have been granted. 63 Ark. 176; 34 *Id.* 632; 111 *Id.* 399. The verdict shocks our sense of justice.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee.

1. The testimony of the accomplice, Simmons, was fully corroborated. 115 Ark. 482.

2. The remarks of the prosecuting attorney were not prejudicial. 112 Ark. 452; 115 *Id.* 117. There was no abuse of discretion by the court. 193 S. W. 89.

3. There was no error in refusing a new trial for newly discovered evidence. The new evidence merely tended to discredit or impeach one or more of the witnesses. 69 Ark. 546. There was no abuse of discretion by the court. 96 Ark. 403.

4. The verdict was not the result of passion or prejudice, but was fully sustained by competent evidence.

HART, J. (after stating the facts). Harry Simmons made a confession and was a witness for the State. According to his testimony, Arthur Neal, Joe Ed Smith, George Brown and himself robbed Ben Baker and his mother at the house of the former in Nevada County, Arkansas. He described in detail how the robbery was committed. He was an accomplice of the defendant, and under our statute the latter cannot be convicted unless the testimony of the accomplice is corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Kirby's Digest, section 2384 .

It is earnestly insisted by counsel for the defendant that the testimony of Harry Simmons is not sufficiently

corroborated to warrant the jury in finding the defendant guilty. We cannot agree with counsel in this contention. Simmons testified that they all went to the scene of the robbery in a Ford car which was driven by the defendant. They all had on blue overalls, and two of them went into the house and the other two remained outside for the purpose of watching so that the ones in the house might be warned of the approach of anyone. Their faces were covered with smut.

It was shown by witnesses for the State that George Brown owned a Ford car and that he and other parties were seen in it in Hope on the Sunday evening that the robbery occurred and that they left there a short time before dark. Baker says that they had smut on their faces and blue overalls on. Simmons also said that they stopped before they got to Baker's house and cut off some pieces of telephone wire. Baker testified that his mother's hands were fastened together by wire and the wire was exhibited to the jury. The jury might have inferred from this fact that it was telephone wire. Simmons testified that Arthur Neal stayed on the outside around the smokehouse as a watcher while the robbery was being committed. The deputy sheriff who arrested Neal observed these tracks on the next morning after the robbery and said that they looked like they had been made by a pair of shoes which Neal had on when he was arrested. Simmons said that they all had on blue overalls and had disguised themselves by blacking their faces with smut. After the robbery was over they drove hurriedly back toward Hope and separated before they got into town. The defendant went on with the automobile, and the other parties went to the light plant, where they took off their overalls and washed their faces. He also stated that Joe Ed Smith was dressed in a soldier's uniform. The engineer of the light plant remembered that some parties came there on that Sunday night, and that one of them was dressed in a soldier's uniform while the other two had on blue overalls. He noticed that the face of one of them had a good deal of black on it when he

washed. His attention was not particularly called to the parties and he could not identify any of them. He knew the defendant and knew that he was not one of them. Then, too, Baker had a conversation with Brown shortly after the robbery with regard to it, and the jury might have inferred from what Brown said that he had carried the parties to the scene of the robbery. Those facts and circumstances, if believed by the jury, were a sufficient corroboration of the testimony of the accomplice and warranted the jury in finding the defendant guilty.

The court instructed the jury on the subject of the corroboration required of the testimony of the accomplice in the manner provided by the section of the digest above referred to and the decisions of our court construing it.

After the jury had convicted the defendant and after the defendant had filed his motion for a new trial, the defendant filed a supplemental motion for a new trial. In it he exhibited an affidavit from Harry Simmons in which the latter stated that he was originally induced to enter a plea of guilty and testify against the defendant by the promise of the deputy sheriff that he himself would go free and by the threat that if he did not so testify he would get a long prison sentence.

In his affidavit Simmons denied that either himself or the defendant were present when the robbery was committed, or that they had anything to do with it. In short, he repudiated *in toto* what he had testified to before the jury in the trial of the defendant and undertook to explain away his testimony.

In asking for a reversal of the judgment on this ground, counsel for the defendant rely mainly on the case of *Bussey* v. *State,* 69 Ark. 545. In that case the defendant was tried and convicted of the crime of rape. The conviction rested almost entirely upon the testimony of the prosecuting witness, and the court held that under the peculiar circumstances of that case it was better that the case should be retried than to enforce a judgment for the extreme penalty of death.

In the present case Simmons was before the court when he testified at the trial of the defendant, and the court had the opportunity to examine his testimony and demeanor on the witness stand and compare them with the statements made by him in his affidavit after the trial was ended and the defendant had been convicted by the jury. Simmons' testimony was corroborated in several important details, and it cannot be said that the trial court under the circumstances abused its discretion in not granting the defendant a new trial because Simmons made a written retraction of his former testimony and swore to the truth of it.

Again it is contended that the judgment should be reversed because of certain prejudicial remarks made by the prosecuting attorney in arguing the case before the jury.

In his closing argument to the jury the prosecuting attorney said: "Here comes old Mrs. Smith and testifies that she knows where George Brown was. I know old Mrs. Smith and I know all about her. I can not tell here what I know, but I wish you knew."

The defendant objected to this argument and moved the court to admonish the jury not to consider it. The court overruled the objections of the defendant, and the defendant excepted to the ruling of the court.

The defense of the defendant was an alibi. Mrs. Smith ran a hotel in Hope, Arkansas, where the defendant took his meals. She was a witness in his behalf and testified that he ate his supper at her hotel on the evening that Ben Baker's house was entered and he was robbed. She testified as to the details of a special conversation she had with the defendant on that evening and gave her reasons for knowing that he was there. This was at an hour of the day when, according to the witnesses for the State, the defendant was on his way to the scene of the robbery. Thus it will be seen that she was a material witness for the defendant, and that her testimony, if believed by the jury, would have established

his innocence of the charge against him. No evidence was introduced tending to impeach her character.

The prosecuting attorney went out of the record and stated that he knew all about Mrs. Smith, but could not tell the jury what he knew of her and wished that the jury could know. The prosecuting attorney is not allowed to state, as a matter of fact, that of which there is no evidence. His statement in the case at bar was not within the latitude of discussion the law accords to counsel. Its evil tendency and prejudice to the rights of the defendant are manifest. There is not a fact in the record from which an inference can be drawn that Mrs. Smith was of bad character. The prosecuting attorney went out of the record to state that he knew her character and that he wished the jury knew it. This was an adroit way of asking the jury to draw an unfavorable inference about the character of the witness from a statement of fact made by the prosecuting attorney which was not in the record. The fact is the principal, the inference is the incident, and without which the fact can not have existence. *Dunmore* v. *State* (Ala.), 22 So. 541.

The remarks of the prosecuting attorney were similar to the remarks of counsel held prejudicial in *Fort* v. *State,* 74 Ark. 210, and *German-American Ins. Co.* v. *Harper,* 70 Ark. 305. The error of the court in this regard compels a reversal of the judgment.

Other statements were made in the closing argument of the prosecuting attorney which might be considered improper, but as in our judgment they will not occur in another trial, we shall not extend this opinion by commenting on them.

For the prejudicial error in the closing argument of the prosecuting attorney to the jury, the judgment must be reversed and the cause remanded for a new trial.