SPENCE *v.* STATE.

Opinion delivered July 13, 1931.

*Peyton D. Moncrief, J. M. Brice, A. G. Meehan* and *John W. Moncrief,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

HART, C. J. Ruth Spence prosecutes this appeal to reverse a judgment of conviction against her for mur-

der in the second degree upon the verdict of a jury fixing the punishment at five years in the State penitentiary. Counsel for appellant argue three assignments of error, all relating to the admission of evidence.

In the first place, it is insisted that the court erred in the admission of nonexpert evidence on the question of the insanity of appellant. Appellant shot and killed Jack Worls in the courthouse at DeWitt, Arkansas, while he was on trial for the murder of her father. The killing occurred about six o'clock in the evening just after the jury had been excused for the day and were leaving the court room. Appellant at the time was eighteen years of age and gave as a reason for killing Worls that she was afraid that the jury trying him might turn him loose. Her counsel interposed as a defense that she was insane at the time of the killing. The State introduced several jurors in the Worls case who testified that they had observed the appellant while she was on the witness stand in that case and expressed the opinion that she was sane. She was not on the witness stand over five minutes, and the jurors who testified in the instant case had no previous acquaintance with her upon which to base an opinion as to her sanity or insanity.

In a case note to 72 A. L. R. at page 579, it is said that the general rule is that nonexpert witnesses will not be permitted to express a general opinion as to sanity. They cannot give an opinion independent of the facts and circumstances within their own knowledge. They may detail the relevant facts known to them, and then express an opinion as to the sanity of the defendant. The author cites Arkansas cases which support the rule. *Bolling* v. *State,* 54 Ark. 588, 16 S. W. 658; *Shaeffer* v. *State,* 61 Ark. 241, 32 S. W. 679; *Green* v. *State,* 64 Ark. 523, 43 S. W. 973; *Byrd* v. *State,* 76 Ark. 286, 88 S. W. 974; *Schuman* v. *State,* 106 Ark. 362, 153 S. W. 611; *Dewein* v. *State,* 120 Ark. 302, 179 S. W. 346; *Thurman* v. *State,* 176 Ark. 88, 2 S. W. (2d) 50; *Davis* v. *State,* 182 Ark. 123, 30 S. W. (2d) 830.

In *Shaeffer* v. *State*, 61 Ark. 241, 32 S. W. 679, it was held that the nonexpert witnesses who testified as to the sanity of the defendant did not show that they were possessed of information sufficient to form an opinion entitled to be adduced as evidence. J. L. Moore, one of the witnesses, testified as follows: "I have seen the defendant for five or six years. During that time I have seen him on the street very often. I have never had him work around me. From what I have seen of him during that time and have observed, I don't think there is anything wrong with him." B. C. Black testified: "I have seen the defendant on the street for several years. I never noticed anything peculiar about him. From what I have seen of him, I never thought but that he was all right."

In *Hankins* v. *State*, 133 Ark. 38, 201 S. W. 832, L. R. A. 1918D, 784, it was held that the court erred in admitting the testimony of nonexpert witnesses who gave their opinion as to the insanity of the accused without stating any facts upon which they based their opinion and without showing that they were qualified to express such an opinion by stating the facts upon which such opinion was based. In that case, the nonexpert witnesses had no intimate acquaintance or association with the defendant and were allowed to testify that they saw the defendant at a show on the night of the killing, and that there was nothing in his conduct to indicate that he was insane.

In *State* v. *Von Kutzleben*, 136 Iowa 89, 113 N. W. 484, it was held that it was not competent for the State to call nonexpert witnesses from the bystanders at a trial to express their judgment based alone on observation made during the trial of the accused on the issue of his sanity.

In *State* v. *Turner*, 126 Maine 376, 138 Atl. 562, the court said: "We certainly know no jurisdiction in which the opinion of a lay witness as to the sanity of a man, whom he has seen less than twenty minutes, would be regarded as admissible."

As we have just seen, the witnesses in the present case were jurors in the Worls case and had no previous

acquaintance with appellant. They had no reasonable opportunity to observe her acts and conduct except for a period of time not exceeding five minutes while she was a witness in the case of a man charged with killing her father. The nonexpert witnesses in the present case detailed no facts at all upon which they based their opinion, and the court erred in permitting them to testify as to the sanity or insanity of appellant whose legal accountability was the main matter in issue before the jury.

The next assignment of error is that the court erred in allowing Dr. Brown, an expert witness for the defendant, to be contradicted upon a collateral matter. As we have already seen, the defense was that appellant was insane at the time of the killing. Dr. Brown, the superintendent of the State Hospital for Nervous Diseases, was introduced as an expert witness in her behalf, and, after reading the hypothetical question propounded to him, stated that in his opinion she was insane at the time of the killing. He was cross-examined at length by counsel for the State, and in this connection we will state that much latitude should be allowed in the cross-examination of expert witnesses in order to test their credibility by eliciting knowledge of matters about which they give an opinion. Counsel for appellant, however, insisted that the error committed by the court was not in the cross-examination, but in allowing his testimony on the cross-examination to be contradicted by other testimony when the question elicited on cross-examination was collateral to the main issue. Dr. Brown had testified that another person who had been committed to the State Hospital for Nervous Diseases from Lonoke County was insane, and that the court erred in permitting testimony to the effect that such person was sane. This evidence was given by a nonexpert witness who based his opinion upon an acquaintance of thirty years.

It is well settled, however, in this State that a party who cross-examines a witness on collateral matters for the purpose of testing his credibility as a witness is

bound by his answers and cannot contradict his testimony on a collateral issue. The reason for the rule is to avoid a multiplicity of issues which would tend to confuse and divert the minds of the jury from the main issue. *McAlister v. State,* 99 Ark. 604, 139 S. W. 684; *Peters v. State,* 103 Ark. 119, 146 S. W. 491; and *Williams v. State,* 175 Ark. 752, 2 S. W. (2d) 36.

In the case last cited, the court said that the object of cross-examination in a collateral matter is to enable the jury to comprehend just what sort of person they are called upon to believe; but because the character of the witness is collateral to the main issue, which is the guilt or innocence of the defendant, the latter is bound by the answer of a witness on a collateral matter.

The reason for the rule would apply with just as much force in cases of contradiction of an expert witness as where an attempt is made to contradict a nonexpert witness on a collateral issue. It is only where the examining party is allowed to inquire about collateral acts that the opposing side will usually be allowed to contradict the witness by evidence showing to the contrary. *McArthur v. State,* 59 Ark. 431, 27 S. W. 628; and *Howell v. State,* 141 Ark. 487, 217 S. W. 457.

The present case especially calls for the application of this settled rule of evidence, when we consider the expert witness was attempted to be contradicted by the testimony of the regular judge of the circuit court who was the principal witness for the State at the trial. We think that the special judge who tried the case committed error in allowing the introduction of evidence to contradict the answers given by the expert witness in the cross-examination on collateral issues.

It is next insisted that the court erred in allowing the State to show on the cross-examination of appellant's witnesses that her father had been convicted of murder in killing one Jed Wilsey and had been sentenced to the penitentiary for nine years therefor. The State attempts to justify this action on the ground that in the hypothet-

ical question propounded to Dr. Brown the killing of Jed Wilsey by the father of appellant was treated as an undisputed fact, and that no prejudice resulted to appellant from the admission of the testimony. The State was permitted to ask on cross-examination several witnesses for the appellant if her father had not been convicted of the murder of Jed Wilsey and sentenced to nine years in the penitentiary for the killing. In one instance Wilsey was referred to as an old man seventy years old. These questions were all asked before the appellant placed Dr. Brown on the stand and propounded the hypothetical question to him. Later on in the trial the same questions with regard to the murder of Wilsey by the father of appellant were asked other witnesses for the State. The repeated and persistent question was such a departure from the legal methods in the introduction of evidence as in our opinion was calculated to prejudice the rights of appellant and call for a reversal of the judgment of conviction.

Counsel for appellant also complain that the court erred in refusing to give certain instructions asked by appellant. We do not deem it necessary to set out or comment on these instructions. We have carefully considered the instructions given by the court and are of the opinion that, they fully conform to the rule with regard to the defense of insanity laid down by this court in *Bolling* v. *State,* 54 Ark. 588, 16 S. W. 658; and *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186.

For the errors indicated in the admission of evidence, the judgment will be reversed, and the cause will be remanded for a new trial.