O. J. CHRONISTER *v.* STATE of Arkansas

CR 78-156                                         580 S.W. 2d 676

Opinion delivered April 2, 1979
(Division I)
[Rehearing denied June 4, 1979.]

*John T. Harmon* and *Russell Reinmiller,* for appellant.

*Steve Clark,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant O. J. Chronister was found guilty by a jury of criminal solicitation in violation of Ark. Stat. Ann. § 41-705 (Repl. 1977) and sentenced to 30 years imprisonment. We reverse because of the action of the trial court in permitting the prosecuting attorney to testify during closing argument of appellant's counsel.

The record shows that the two key witnesses for the State were Virginia Gill and Galen Hutcheson. Their testimony, stated in the light most favorable to the jury's verdict, shows that appellant hired Galen Hutcheson, an undercover policeman, to kill his wife. Virginia Gill, who was also known by her "CB" name as Delta Dawn, assisted appellant in finding someone to kill his wife by notifying the officers and setting up the initial contact between appellant and Galen Hutcheson.

On cross-examination Virginia Gill testified that she had been married and divorced and that the custody of her two minor children born of that marriage had been awarded to the father. Shortly after receiving the subpoena, which was served some five or six days before the trial, she had gone to

Texas to visit a friend's mother. She described the friend as a man she was planning to marry. She at first stated that she was then working at the Children's Colony in Conway as a psychologist's aide. The proof then developed that she only got into the ninth grade in high school and that she did not know anyone in the psychology department of the Children's Colony. Subsequent interrogation developed that at the time she first met appellant she was living in a mobile home park in Russellville with a Bruce Kilgore. In developing her source of support at the time, she stated that she worked for the Russellville Nursing Home. Finally, in answer to the question of where she worked during the three months that she knew appellant prior to his arrest, Virginia Gill stated: "I just worked for a couple of weeks there at the Russellville Nursing Home, and I haven't worked anywhere since." While appellant's counsel was making his closing argument to the jury the record shows the following:

"MR. HARMON: What is O.J. Chronister doing while this is happening to him? He has been separated from his wife for seven months, and Alex Streett asked him if he had been true to his wife. Don't you know that if he could find one person in Pope County that had ever been with O. J. Chronister, he would have paraded them in here to tell you about it. The man has never been unfaithful to his wife. He has been faithful to her — he has been true to her. He has supported her.

MR. STREETT: I hate to keep objecting. Mr. Harmon knows better than that. He knows the Rules of Evidence, and that I can't bring in someone to prove a specific incident of misconduct.

MR. HARMON: You asked him if he had been true to his wife.

BY THE COURT: I'm going to sustain the objection on that point.

MR. HARMON: Okay. Let's get back to the common sense that Alex Streett talked to you about. O. J. Chronister's reputation in this community seems to be

of high stature. People have testified and told you what they know about him, and find him to be a law abiding citizen. They find his reputation for truth and veracity in this community to be good. I will stake that against Galen Hutcheson — you bet I will. I'll stake it against Delta Dawn — you bet I will. Do you think that she works at the Children's Colony? That will be a question for you to decide in determining her credibility.

MR. STREETT: I hate to object on this but that is improper.

BY THE COURT: Objection sustained.

MR. STREETT: Mr. Harmon knows personally that she was working at the Children's Colony. I ask the Court to admonish him.

MR. HARMON: I don't know that.

MR. STREET: You do know.

BY THE COURT: The objection is sustained."

The State to sustain the action of the prosecuting attorney's statement that counsel for appellant knew that Virginia Gill worked at the Children's Colony contends that the error is harmless. In so doing the State, however, acknowledges that there is nothing in the record to indicate that appellant's counsel had any such knowledge. In *Brown* v. *State*, 143 Ark. 523, 222 S.W. 377 (1920), Brown's alibi defense depended upon the credibility of Mrs. Smith who ran the boarding house where Brown resided. In holding that the remarks of the prosecuting attorney were prejudicial when not supported by the evidence, we stated:

"The prosecuting attorney went out of the record and stated that he knew all about Mrs. Smith, but could not tell the jury what he knew of her and wished the jury could know. The prosecuting attorney is not allowed to state, as a matter of fact, that of which there is no evidence. His statement in the case at bar was not within the latitude of discussion the law accords to counsel. Its evil tendency and prejudice to the rights of the defendant are manifest."

Appellant also argues that the trial court erred in ruling that the State could not call witnesses to attack his credibility to prove specific acts of misconduct. The trial court correctly ruled that the State could not call witnesses to contradict appellant's testimony on cross-examination with reference to a collateral matter by showing specific acts of infidelity. See Ark. Stat. Ann. § 28-1001, Rule 608(b) (Supp. 1977) and *Spence* v. *State*, 184 Ark. 139, 40 S.W. 2d 986 (1931).

The trial court refused to instruct the jury at appellant's request, in accordance with Ark. Stat. Ann. § 41-715 (Repl. 1977), which provides:

"It is an affirmative defense to a prosecution for criminal attempt, solicitation, or conspiracy that the conduct charged to constitute the offense is inherently unlikely to result or to culminate in the commission of a crime and neither the conduct nor the defendant presents a public danger warranting imposition of criminal liability."

We can find no error in the refusal of the instruction offered. The plan or plans discussed by which the wife could be killed — *i.e.* breaking her neck in a faked automobile wreck — certainly cannot be characterized as conduct "inherently unlikely to result or to culminate in the commission of a crime. . . " Furthermore, Ark. Stat. Ann. § 41-713(2) (b) (Repl. 1977), provides that it is no defense to the crime of solicitation that the person whom he solicits has feigned agreement.

Appellant's contention that life imprisonment for criminal solicitation is unconstitutionally excessive punishment for nothing more than the spoken word cannot be considered by us since the jury only fixed appellant's punishment at 30 years imprisonment — *i.e.* the issue is not ripe for review. See *Venable* v. *State*, 260 Ark. 201, 538 S.W. 2d 286 (1976).

The issues raised by appellant because of the denial of continuances are not apt to arise on a new trial.

Reversed and remanded.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and PURTLE, JJ.

Rehearing denied June 4, 1979; dissenting opinion on denial of rehearing.

DARRELL HICKMAN, Justice, dissenting. I would grant a rehearing in this case because in my judgment the majority was in error in reversing this case.

First of all, I do not consider the remarks of the prosecuting attorney so flagrant and improper as to warrant a mistrial. The attorneys in this case were both able trial counsel and it was a difficult case to try. It is not unusual for lawyers to argue with each other or interrupt each other during closing arguments.

I do not consider the first remarks of the prosecuting attorney objectionable. In fact, the court was quite proper in sustaining the objection to the remarks of the defense attorney. It would have been improper for the prosecuting attorney to collaterally attack the credibility of the witness by proving a specific act of misconduct by extrinsic evidence. Ark. Stat. Ann. § 28-1001, Rule 608 (b) (Supp. 1977).

The second remark the prosecuting attorney made, after an objection was made and sustained, related to whether a witness worked at the Children's Colony. There was no evidence in the record that she did not work at the Children's Colony at the time in question. Both counsel improperly "testified."

The court, at the inception of its instructions to the jury, gave the standard instruction which is given to all jurors:

Arguments, statements, and remarks of attorneys are not evidence but are made only to help you in understanding the evidence and applicable law. Any argument, statements or remarks of attorneys having no basis in the evidence, should be disregarded by you.

I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness who may have testified. If anything that I have done or said has seemed to so in-

dicate, you will disregard it and form your own opinion.

Just before the colloquy occurred that is reported in the majority opinion, the judge said:

> There was an objection earlier, which I sustained. I'm not sure myself from time to time trying to recall all of the evidence. Ladies and gentlemen, it is not my decision, it's yours. You have heard the testimony and you are the ones who are to consider the evidence and the law. *I'm going to admonish you again that if a lawyer tells you something that has no basis in the evidence, disregard it.* If it does have basis in the evidence, you may consider it. [Emphasis added.]

This was a heated trial and both the State and the defendant were well represented. Both made long closing arguments to the jury, emphasizing the evidence that had been presented. The defense counsel was guilty of testifying to a certain extent. For example, he made the flat statement as quoted in the majority opinion: "The man has never been unfaithful to his wife. He has been faithful to her — he has been true to her." In another instance he said, "O. J. Chronister did not lie to you when he took the witness stand."

Most trial lawyers exaggerate or emphasize favorable testimony. I do not consider the remarks as serious enough to warrant reversing the jury's verdict and ordering a new trial. The jury had been admonished to disregard statements made by the attorneys, and this had been emphasized just before the remarks were made in this case.

Even so, all of this is academic because there was no objection whatsoever by the appellant to the remarks by the prosecuting attorney. The appellant asks us to consider the remarks as plain error and reverse the judgment of the trial court. The only case cited by the majority to justify its action in this case is *Brown* v. *State,* 143 Ark. 523, 222 S.W. 377 (1920). In the *Brown* case there was an objection to the remarks of the prosecutor. The same is true in the case of *Hays* v. *State,* 169 Ark. 1173, 278 S.W. 15 (1925). In the case of *Williams* v. *State,* 259 Ark. 667, 535 S.W. 2d 842 (1976), there was a prompt and proper objection to improper statements

by the deputy prosecuting attorney. I cannot find a case where we reversed the judgment of a trial court for improper remarks of a prosecuting attorney where no objection was made.

We have also held many times that we will not consider an issue raised for the first time on appeal. *O'Neal* v. *State*, 253 Ark. 574, 487 S.W. 2d 618 (1972). If the majority is going to depart from these rules, it should say so. Reversal is a serious matter, justified only for prejudicial error or violation of a substantial right. I cannot agree that the remarks of the prosecutor in this case were prejudicial error. The defendant has shown nothing to indicate that prejudice existed, and, most importantly, there was no objection made.

Therefore, I would grant the rehearing and affirm the trial court's judgment.