## GREEN v. STATE.

### Opinion delivered October 11, 1909.

1. RAPE—CONVICTION OF ASSAULT.—An assault with intent to commit rape is included in the charge of rape, and a conviction may be had of the former under an indictment for the latter. (Page 565.)

2. APPEAL—MODIFICATION OF SENTENCE.—Where the evidence in a prosecution for rape failed to establish penetration, but established the commission of an assault with intent to rape, a conviction of rape will

be set aside on appeal and, with the consent of the Attorney General, the cause will be remanded with directions to sentence the accused for assault with intent to rape.  (Page 565.)

Appeal from Van Buren Circuit Court; *Brice B. Hudgins,* Judge; judgment modified.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

The question of fact as to whether or not the appellant accomplished his purpose is settled by the verdict of the jury.  50 Ark. 387; 21 Ark. 306; 24 Ark. 251.  Consent of the victim is not material in this case.  Where the female assaulted is under the age of consent, absence of consent will be presumed because of her incapacity to give it.  50 Ark. 387; 29 Ark. 120; 11 Ark. 389.

HART, J.  Abe Green was indicted for the crime of rape. He was tried before a jury, found guilty and sentenced to death. He has duly prosecuted an appeal to this court.

The testimony is correctly abstracted by the Attorney General as follows:

Eura Webb, the prosecuting witness testified:  "My name is Eura Webb.  I am fourteen years of age.  I know the defendant.  I went over to Mr. Malone's after some hoes and goobers. I started back home and met Abe Green.  He spoke to me, and asked me where Pa was.  I told him at home plowing, and he got behind me and grabbed me around the neck and started with me out in the bushes.  And that is the last I know.  He was choking me.  I don't know exactly how far we were from home or Malone's.  The next time I remembered anything I was in my brother's field.  There was a string around my neck.  I don't know how I got it off.  My neck and face were bloody when I got there.  My brother, Ellis, took me to Mr. Malone's. This was in Van Buren County, three or four weeks ago. Afterwards I was sore on my back and neck, in the small of my back.  I had a bruised place on the back of my leg (indicating.) I had a string around my neck, but don't know where I took it off, nor what I did with it.  That was down in the woods.  I was thoroughly conscious that the string was there, and that I was choking.  The first I remember after that was in Ellis's

field. I didn't look at the string when I took it off; haven't any idea how I got it off; haven't seen it since. My private parts were not sore. There was a scratch on the back part of my leg above the knee. (Shows the court how large). I couldn't see it, but my mother told me it was there. She examined me the next day. My underskirt was torn down at the hem. (Shows the court; the rent was about eight or nine inches long). I don't know whether it was torn when I met the defendant or not. The first thing I remember after he took me into the bushes was that I was in Ellis's field. I knew there was a string around my neck because I was lying down and choking. I got it off while I was on the ground. When I took it off, I fell with my head in my lap."

Martha Webb testified: "Eura Webb is my daughter. I know Abe Green. My daughter was assaulted on Monday, the 10th day of May, about three weeks ago. I live near Formosa, in Van Buren County, Ark. Mr. Malone lives about a mile from us in the same county and State. The road between our house is in the same county and State. Eura left home about eight o'clock. The next I saw of her was about ten o'clock. They had started to Mr. Malone's house when I got there. She was bruised up. Her neck was red as blood. Her underskirt was torn into the hem, and she had a scratch on her leg, about so long (indicating six inches,) and two splotches on her clothes in front. They were on her bottom skirt; were stiff white splotches, right in front (indicating to the court they were about one and one-half inches square). The marks on her leg look like the print of finger nails (indicates that it was five or six inches long). Her neck was black, and there was the print of a string around it where it had buried itself in her neck. There was blood on her neck and her top dress and waist. I didn't examine her clothes until Tuesday morning about sunup. There was no blood on her underclothing, and her leg looked like it had been freshly scratched. My daughter was 14 years old the 19th of February, 1909. She was fully developed into womanhood, and had her first monthly sickness on the 13th day of April, 1909."

Other testimony was introduced to show that in the bushes where the prosecuting witness says the defendant was dragging

her there appeared the prints of the heel of woman's shoe as if made by a person laying down, and close to it appeared the toe prints of a man's shoe.

The defense introduced Dr. Russell, a practicing physician, as a witness, who testified that he did not think a girl of 14 could have intercourse for the first time without being sore. That the soreness is caused by the entering and dilation of the parts.

The only question raised the record is, was there sufficient evidence to support the verdict? We are convinced there was not.

Rape, as defined by our statute, is the carnal knowledge of a female forcibly against her will. Kirby's Digest, § 2005.

Proof of actual penetration into the body shall be sufficient to sustain an indictment for rape. *Ib.* § 2006.

The prosecuting witness says that the defendant grabbed her around the neck and started with her into the bushes. That she became unconscious, and does not remember anything more until she regained consciousness and found she was in her brother's field. The record does not disclose that any examination was made of her private parts to ascertain if they had been bruised or had become inflamed, as tending to show penetration of her body. The prosecuting witness herself testified that she felt no soreness there. Dr. Russell stated that he thought soreness would result from sexual intercourse with a girl 14 years old. There is no testimony whatever to indicate that penetration of her body had been made unless it can be inferred that such act was accomplished because a stiff white splotch was found on her underskirt and the toe print of a man's shoe and the heel prints of a woman's shoe in the soft earth where the defendant had dragged her. We do not think this is sufficient to show that there was penetration of her body.

In connection with the prosecuting witness' testimony, it is ample to show an assault with intent to rape of a most aggravated character.

An assault with intent to commit rape is included in the charge of rape, and a conviction may be had of the former under an indictment for the latter. *Pratt* v. *State,* 51 Ark. 167.

Therefore, the uncontradicted evidence showing that the defendant was guilty of an assault with intent to rape, under

the rule established in the case of *Jones* v. *State*, 88 Ark. 579; *Hamby* v. *State*, 72 Ark. 623 and *Vance* v. *State*, 70 Ark. 272, and other cases decided by this court, an order will be made setting aside the judgment for rape, and affirming the judgment for assault with intent to commit rape, with the punishment fixed at ·21 years in the State penitentiary, unless the Attorney General shall, within 15 days, elect to take a new trial. In which event the judgment will be reversed, and the cause remanded for a new trial.