JENKINS *v.* STATE.

Crim. 3959

Opinion delivered November 4, 1935.

626

C. W. Garner, for appellant.

Carl E. Bailey, Attorney General, and Guy E. Williams, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted in the circuit court of Pulaski County, First Division, on three separate charges of murder for poisoning and killing three of her children and on two separate charges of assault with intent to kill her husband by poisoning him. She was tried and convicted in said court upon the charge of murder in the first degree for killing her daughter, Alta Fern Jenkins, and as a punishment therefor was adjudged to serve a life term in the State penitentiary, from which judgment an appeal has been duly prosecuted to this court.

She has assigned a number of alleged errors as grounds for a reversal of the judgment, only one of which is regarded by the court as reversible error, viz., the action of the trial court in permitting her husband, Charley Jenkins, to testify against her in the trial.

He testified that on Wednesday night, November 23, 1934, his wife, the appellant, filled eight capsules with quinine out of a blue bottle of quinine he had previously purchased, which he and their three children took on Wednesday and Thursday nights with no ill effect; that on Thursday night he filled ten capsules out of the same bottle and left them in a brown box where the quinine bottle was kept; that on the following night about seven o'clock, at the suggestion of appellant, he gave each of the children a capsule out of the box where he had left the capsules the night before, from the effect of which the three children died that night, and he, himself, came near dying; that at the time he did not notice a brown bottle in the box with the blue one; that prior to this time, on November 3, 1934, he went to Carlisle on a mission for his wife, and that before he left, she fixed up some liquor for him to take along and told him not to

drink it until he got down the road away from everybody and then to turn it up and drink it all, and that when returning from Carlisle he tasted it; that it was very bitter and made him violently sick so that for more than an hour he could not walk; that, after returning from Carlisle, he told appellant the effect it had on him, and that some one must have doped it; whereupon she advised him to pour what was left in the commode, which he did.

The testimony detailed above was prejudicial to appellant in the trial of the cause in view of the fact that it was shown by other testimony that prior to these occurrences she had purchased from a druggist under an assumed name a bottle of strychnine in a brown bottle like the one found in the box with the quinine bottle, and in view of the fact that she confessed after the death of her children to having poisoned the whiskey she gave her husband to drink on his trip to Carlisle, and in view of the fact that prior to her confession she had denied any knowledge whatever of strychnine being in the house.

Under the common law, neither spouse was a competent witness against the other in any kind of a case, for the reason that husband and wife were one person and to permit one to testify against the other would stir up strife between them and destroy the sacred marital relationship existing between them. The preservation of the holy bonds of matrimony was the inspiration for the rule of evidence by the courts and grounded in what they regarded a safe public policy. This court is thoroughly committed to the rule stated above except in so far as it has been changed by statute. *Woodard* v. *State*, 84 Ark. 119, 104 S. W. 1109; *Padgett* v. *State*, 125 Ark. 471, 188 S. W. 1158; *Lighter* v. *State*, 157 Ark. 261, 247 S. W. 1065; *Conley* v. *State*, 176 Ark. 654, 3 S. W. (2d) 980; *Robinson* v. *State, ante* p. 455.

It goes without saying that this rule might be changed by statute, but such a statute, being in derogation of the common law, must be strictly construed. The State, in the instant case, justifies the admission of the testimony of Charley Jenkins against his wife, the ap-

pellant herein, under § 3125 of Crawford & Moses' Digest, which is as follows:

"In any criminal prosecution, a husband and wife may testify against each other in all cases in which an injury has been done by either against the person or property of either."

Under a strict construction of the statute, the word "property" does not include children. *Verser* v. *Fort,* 37 Ark. 28; *Warsaw* v. *Gimble,* 50 Ark. 351, 7 S. W. 389; *Coulter* v. *Sypert,* 78 Ark. 193, 95 S. W. 457; *Anthony* v. *Tarpley,* 45 Cal. 72, 187 Pac. 729. Strictly speaking, the word "property" as used means only real and personal property. The statute then means that a spouse may testify against the other in all cases where he or she has injured the real or personal property of the other.

It is urged with much zeal and fervor by counsel for appellant that it was error to admit the written confession of appellant relative to her attempt to poison her husband a short time before this tragedy occurred: first, for the reason that the confession was not voluntary, and, second, because the confession in the main related to a different and independent crime from the charge upon which she was being tried.

(1) The evidence was conflicting as to whether any coercion was practiced upon appellant to induce the confession. The court heard evidence pro and con upon this issue before admitting the confession, and his conclusion that it was voluntarily made finds ample support in the testimony.

(2) The attempted crime to which she confessed tended to show an identical attempt on her part a few weeks before to commit the same kind of crime upon one member of her family for which she was being tried. Poison was used in each instance to make away with her husband, and the nearness in point of time so connect the two attempts with the poisoning of the daughter that it tends to show a plan or scheme on her part to destroy her whole family perhaps for the purpose of collecting insurance carried upon their lives or that she might have a better opportunity to associate freely with her alleged paramour.

The kindred nature of the crimes and their nearness in point of time justified the court in admitting the confession she made relative to her attempt to poison her husband.

The court fully and correctly instructed the jury in the case.

On account of the error indicated, the judgment is reversed, and the cause is remanded for a new trial.