JENKINS *v.* STATE.
Crim. 4015.
Opinion delivered March 22, 1937.

*C. W. Garner* and *G. W. Fike,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

GRIFFIN SMITH, C. J.    Sybil, Alta Fern, and Oby Lee Jenkins, children of Minnie and Charlie Jenkins, age 10, 8 and 6 years, respectively, died November 23, 1934, from the effects of strychnine administered in capsules. The father became seriously ill from a similar cause, but recovered. It is also alleged that three weeks prior to the death of the children, appellant administered poison to her husband, Charlie Jenkins, with murderous intent.

Indictments were returned against Minnie Jenkins, charging that she planned to murder the three children and her husband. It was the state's theory that the accused woman became enamored of Dudley Bryant, a young man who roomed with the family, and that the two were having illicit relations. It was shown that the children and Mr. Jenkins were insured in favor of the mother and wife, and it was alleged that appellant hoped through

the mass murders to profit financially, and at the same time to rid herself of family obligations.

This is appellant's third trial on a murder accusation. On November 4, 1935, this court reversed a judgment of conviction carrying life imprisonment. *Jenkins* v. *State,* 191 Ark. 625, 87 S. W. (2d) 78. The error was that appellant's husband had been permitted to testify against her. On the second trial the jury disagreed. The judgment from which this appeal comes carries a prison sentence for life.

With two exceptions the errors complained of were not prejudicial *per se,* but with respect to the secondary objections we feel that in the aggregate they served to create an atmosphere more hostile to the defendant than the law contemplates.

The gravity of the offense charged, the circumstances of its commission, the fact that three little children were victims of homicidal intent or inexcusable carelessness— these events and the impressions they created were bound to find lodgment in the public mind.

When the alternative is either freedom for the accused or society's compensation, considerations other than impartial administration of the law must be dismissed, and the task of trial should be approached by the state with complete freedom from those personal prejudices which its *quasi* judicial agents so often unconsciously entertain when dealing with evidence which they must necessarily prejudge.

It was objected that bystanders were called for jury service before regular and special panels were exhausted; that a deputy sheriff summoned veniremen from the offices of a relative of interested parties; that members of the jury were permitted to separate, and that a deputy sheriff who was charged with undue activity on behalf of the prosecution drove one of the jurors home while the case was pending; that the court declined to permit appellant to prove that the sheriff and prosecuting attorney consulted as to those who should be called as jurors, and that the court allowed evidence to go to the jury concerning the alleged "framing" of witness Fullbright by one of appellant's attorneys.

None of these assignments, on the record as presented, is sufficient within itself to require reversal, but some of them constitute irregularities which ought to have been avoided.

The most serious error was that of permitting the state to read in evidence testimony given in the first trial by Dudley Bryant. This witness told of conversations with Charlie Jenkins which occurred shortly before the tragedies. Appellant's first conviction was reversed because her husband had been used as a witness against her. Bryant, who was arrested as a suspect in connection with the poisonings, had testified that Jenkins suggested "turning his family over to me." He (Bryant) was out of the state when this trial was had, and his former testimony, verified by the court reporter, was read over appellant's objection. In consequence there was brought to the jury's attention, by an indirect method, the very kind of testimony specifically condemned in *Jenkins* v. *State, supra*. It is true that appellant did not, in objecting, point out the particular ground which rendered it inadmissible. Although this should have been done, failure cannot have the effect of depriving defendant of a material right to which she was entitled as a matter of law; nor was the prejudice cured by the court's instruction that the inadmissible testimony should not be considered.

In argument to the jury the state stressed the fact that appellant's husband was a witness in the first trial, "and when he did testify you should have seen him on the witness stand and heard his testimony. It took that jury a very few minutes to arrive at a verdict of guilty as a result of his testimony. It was true that on the second trial the jury failed to reach a verdict and as a result the court declared a mistrial, but notwithstanding in the second trial only two or three of the jurors voted for an acquittal."

Evidence of this argument was brought into the record by motion to correct the bill of exceptions, and the court, in ordering the amendment, found that the remarks were in answer to references on the subject by an attorney for the defendant. Objections were made in a timely manner, and exceptions saved.

It was error for the court to allow attorneys on either side to make inherently improper arguments, and the error in this case was not cured by admonishing the jury not to consider the statements. *Hogan* v. *State*, 191 Ark. 437, 86 S. W. (2d) 931.

The judgment is reversed, and the cause remanded. MEHAFFY, J., dissents.