SUTTON *v.* STATE.

4102                                    122 S. W 2d 617

Opinion delivered November 14, 1938.

*Robert J. Brown, Jr.,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was indicted for the crime of rape, alleged to have been committed upon the person of Dorothy Sutton, who was his daughter, "a female person under the age of sixteen years." Upon his trial he

was convicted of carnal abuse, and given a sentence of twenty-one years in the penitentiary, from which judgment is this appeal.

It has been held that an indictment for rape will support a conviction for carnal abuse, *Henson* v. *State*, 76 Ark. 267, 88 S. W. 965, or an assault with intent to commit rape. *Green* v. *State*, 91 Ark. 562, 121 S. W. 949.

For the reversal of this judgment it is insisted (1) that error was committed in excluding certain testimony and (2) that it was error to refuse to grant a new trial on account of the recantation by Dorothy of her testimony that her father had carnally known her.

The excluded testimony was to this effect. Witnesses offered to testify that appellant's wife—Dorothy's mother—had said that she would be rid of appellant if she had to "frame up" on him and send him to the electric chair.

In the case of *Jenkins* v. *State*, 191 Ark. 625, 87 S. W. 2d 78, the husband of the defendant was permitted to testify that defendant gave capsules supposed to contain quinine to their children, from the effects of which the children died during the night. We reversed the judgment of conviction in that case on account of the admission of this testimony, for the reason, there stated, that under the common law neither spouse was a competent witness against the other in any kind of case except insofar as that inhibition had been relaxed by statute. The reason which prevents one's spouse from testifying against the other also inhibits favorable testimony in his behalf by his spouse.

The admission of this testimony of the husband against the wife in the Jenkins Case was sought to be justified under the provisions of § 3125, Crawford & Moses' Digest (§ 3959, Pope's Digest), which reads as follows: "In any criminal prosecution a husband and wife may testify against each other in all cases in which an injury has been done by either against the person or property of either." But we held that children were not "property" within the meaning of this statute. In

this connection, it may be said that act 320 of the Acts of 1937, p. 1218, may not be invoked, as it applies only to civil actions.

Upon the remand of the Jenkins Case, *supra,* for a new trial, she was again convicted, and that judgment was reversed because, at the second trial, reference was made to the incompetent testimony admitted at the former trial. *Jenkins* v. *State,* 193 Ark. 842, 103 S. W. 2d 37.

It is true appellant did not offer to call his wife as a witness, but he did propose to prove her statements tending to corroborate his defense. This was testimony which the wife could not have denied had it been admitted. Statements between husband and wife, overheard by other parties, may be used in evidence, and so also may statements of either spouse which are *res gestae.* *Bibb* v. *State,* 83 Tex. Cr. R., 616, 205 S. W. 135. But the excluded testimony was not of that character.

At § 1192, vol. 3, Wharton's Criminal Evidence, (11th Ed.), p. 2045, it is said: "The rule of exclusion also applies irrespective of the kind of testimony given by the witness. Even the declaration of the accused's spouse to a third person with reference to the accused's guilt should not be received against the accused where it was not made in his or her presence or by his or her authority, although the rule is different if the declaration was made in his or her presence. However, *res gestae* declarations of husband and wife are admissible for or against each other, even though each is incompetent to testify."

We conclude, therefore, that it was not error to exclude the testimony as to what appellant's wife had said about his guilt.

Attached to the motion for a new trial was the following affidavit:

"Exhibit A.

"Affidavit.

"Statement of Dorothy Sutton, wherein she retracts and recants the testimony given by her in circuit court

in the trial of her father, David Garland Sutton, on the 12th and 13th days of May, 1938, on a charge of rape:

"My name is Dorothy Sutton. I am 13 years old and will be 14 the 8th day of next August. I testified at my father's trial that he had raped me; but this is not true.

"He never did have anything to do with me that way. I hurt myself riding my cousin Junior Henry's bicycle and this is the reason that the doctor found something the matter with me. (This being a ruptured hymen.)

"I am making this statement because I want to. Nobody has made me do it, or threatened me to get me to do it, or promised me anything for doing it.

"Dorothy Sutton."

This writing bears upon its face the conclusive evidence that Dorothy herself did not write this statement, although she signed it. Quite obviously it was dictated by some other person. Nor did she appear before the judge for his examination of her, on hearing this motion, as to the time when, place where, or circumstances under which the affidavit was made.

The case of *Roath* v. *State,* 185 Ark. 1039, 50 S. W. 2d 985, is cited and relied upon as authority authorizing and requiring the granting of a new trial. In that case it was said: "In considering the recantation made by Mrs. Griffin of her testimony in the case at bar, it may be said that it is the better rule that the recantation of testimony of a material witness made after the trial and verdict is not sufficient to authorize the setting aside of the verdict and granting of a new trial where the verdict is justified on other testimony than that of the recanting witness, and in such cases we have consistently refused to reverse for a new trial. *Osborne* v. *State,* 96 Ark. 400, 132 S. W. 210; *Brown* v. *State,* 143 Ark. 523, 222 S. W. 377; *Little* v. *State,* 161 Ark. 245, 255 S. W. 892. However it is equally well settled in cases where the material evidence upon which a verdict is grounded, and without which it would not have been justified, is given by a wit-

ness who subsequently repudiates this testimony, a new trial ought to be granted. *Bussey* v. *State,* 69 Ark. 545, 64 S. W. 268; *Shropshire* v. *State,* 86 Ark. 481, 111 S. W. 470; *Meyers* v. *State,* 111 Ark. 399, 163 S. W. 1177, L. R. A. 1915C, 302, Ann. Cas. 1916A, 933.''

It is true in this case, as it was true in the Roath case, *supra,* that a conviction would not have been had without the retracted testimony, but there was manifested in the Roath Case no purpose to modify or change the rule regarding the duty of the trial judge in passing upon the effect to be given the retraction.

In the three cases first cited in the quotation from that opinion the judgments were affirmed notwithstanding the retraction; in the last three cases there cited the judgments of conviction were reversed on that account.

In the first of these last three cases—the Bussey case—Judge RIDDICK said: ''The circumstances under which she made this written retraction of her former testimony are such as to raise the belief that the retraction, and not the testimony, is true, . . . .''

In the second of those cases—the Shropshire Case—. one of the state's witnesses swore to defendant's guilt under a misapprehension that defendant's brother was on trial. In holding that this newly-discovered evidence required the granting of a new trial it was there said: ''If any issue of fact had been made on it, or his affidavit had been in conflict with any of the established facts of the case, or had been made under circumstances throwing suspicion upon it, then the circuit judge should be sustained in disregarding it.''

In the third of those cases—the Myers Case—the question was more elaborately considered than in either of the other cases. The prosecutrix and other witnesses in that case appeared in open court at the hearing of the motion for a new trial. It was there made to appear —and we found the fact to be—that the prosecutrix had testified under coercion, and that she had voluntarily retracted her false testimony.

In the Roath Case itself the facts were that subsequent to that trial, and within the time allowed for filing a motion for a new trial, the recanting witness was placed on trial for the same crime. In her trial, where she was subjected to examination and cross-examination, she repudiated the testimony given by her at Roath's trial, and stated that she had been coerced by the officers while in jail into giving the false testimony at his trial, and that it was false. The original testimony of this witness may or may not have been given under duress, but her recanting testimony was entirely voluntary, and, as stated in the opinion in the Roath Case, ''her recantation presents such a state of case that makes us believe that a grave injustice might be wrought by suffering the judgment based on her evidence to be sustained, and that the ends of justice would best be served by a new trial.''

As has been stated, there was nothing in the opinion in the Roath Case impairing the authority of the first three cases there cited in the quotation from that opinion, the latest of which is *Little* v. *State,* 161 Ark. 245, 255 S. W. 892. This Little Case, *supra,* reviewed a large number of our cases and cases from other jurisdictions on the subject, and we there quoted with approval from the case of *People* v. *Shilitano,* 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916 F, 1044, as follows: '' 'In determining the weight to be given to the statements of these witnesses affirming the guilt of the defendant and recanting their testimony, we must endeavor to discern the motives which actuated them. If, upon examination, it should appear that their testimony upon the trial was given without any motive to falsify, and that their statements recanting their testimony were prompted by corrupt or unworthy motives, but little weight should be given to the recanting statements. There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character.' ''

A large discretion abides in the trial judge in granting or in refusing to grant a new trial on account of

newly-discovered evidence, and we review and reverse his action in that behalf only where it is made to appear that this discretion has been abused. *Clayton* v. *State,* 186 Ark. 713, 55 S. W. 2d 88.

In view of the fact that the recanting witness was not brought into court for examination as to the circumstances relating to her recantation, and that no showing was made that this action was voluntary on her part, we are unable to say that the trial judge so far abused his discretion that the judgment must be reversed on that account.

As no error appears the judgment must be affirmed, and it is so ordered.