DELBERT TREAT *v.* STATE OF ARKANSAS

5769                                        486 S.W. 2d 16

Opinion delivered October 30, 1972

*John B. Driver,* for appellant.

*Ray Thornton,* Atty. Gen., by: *John D. Bridgforth,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. This is a Rule I case. Appellant, Delbert Treat, was convicted by a jury of the crime of assault with intent to rape on September 24, 1969, and sentenced to fifteen years imprisonment in the Arkansas Department of Correction. Following the jury verdict, appellant entered a plea of guilty to the crime of kidnapping and was sentenced to fifteen years imprisonment, the sentences to run concurrently. On January 17, 1972, appellant sought post-conviction relief and the court set the matter and conducted a hearing. At the conclusion of the evidence, the court denied relief, and from the judgment so entered, appellant brings this appeal. For reversal it is urged that there was a wide variance in the testimony of the prosecuting witness at the original trial and the post-conviction hearing, and a new trial should have been ordered on all issues involved. Further, the court committed error in refusing to let the defendant develop the testimony as to prior chastity of the prosecuting witness on the date in question, and finally, that the plea of guilty to the crime of kidnapping should have been set aside by the court because at the original trial (for rape) the prosecuting witness testified that appellant kept her covered with a gun at all times, and at the post-conviction hearing she testified that this was not true.[1]

Kathy Johns, before marriage, Kathy Rosenberg, testified that she was twelve or thirteen years old at the time of the alleged rape. She said that her testimony at the original trial was not entirely correct, and was given because her mother told her to do so; "Well, she

[1]In the post-conviction petition, Treat alleged some constitutional grounds for relief, but those are not included in the points for reversal; for instance, he asserted that he was beaten and threatened if he did not enter a plea of guilty; and that he was made to answer questions without counsel; at the post-conviction hearing however, he stated that he was not beaten, and that this assertion was placed in the petition by a fellow prisoner who prepared it, stating to him (Treat) "that would get me back to court".

told me to tell what she told me to or else I would be sorry." The testimony of Kathy at the original trial was not made a part of the transcript and accordingly we do not know the exact differences in her testimony at that trial and her testimony at the Rule I hearing. But it appears that the principal difference was that she originally testified that Treat kept a pistol on her at all times, while in the present hearing, she testified that he only held a gun or her for a short period after she first entered the car. According to the evidence, Treat had picked up Kathy and her older sister (age fifteen) as they were walking along the road and offered them a ride. They sat in the back seat and Treat pulled the pistol and ordered them to get in the front. After driving further, her sister got out of the car but she stayed, being afraid to leave. Kathy testified that she asked him to please put away the gun and he complied. A full discussion of the evidence is unnecessary since the testimony given in the Rule I hearing was sufficient to sustain the conviction. Kathy testified that she had intercourse with Treat twice, and that he did threaten her with the pistol soon after they first entered the automobile.[2] Treat's testimony is rather indefinite. At one point he stated that he was drinking heavily, and he did not know whether he had sexual relationships with the prosecuting witness, but he subsequently stated that he did have intercourse with her. He admitted drawing the pistol and later telling Kathy to take off her clothes,

---

[2] "Q. Did he keep the gun out?

A. Yes.

Q. Did he hold it on you?

A. Yes.

Q. As he drove down the road?

A. Yes.

Q. When did your sister get out and why?

A. We was going to a friend's house to go swimming and he let her out at the friend's house.

though he apparently did not have the pistol in his hand at that time. It appears to be the contention of Treat that Kathy consented to the act or acts of intercourse. The strongest evidence along this line came from Kathy's testimony during the post-conviction hearing. From the record:

"Q. Now, did he force you to remove your clothing, or did you remove them voluntarily or on his request?

A. A little of both.

Q. How do you mean?

A. Well, he was pulling at my bathing suit strap and I was pulling it up but I finally gave up.

Q. Was he threatening you in any way?

A. He said a few times when my sister was there that he would kill us if we tried to jump.

Q. Why didn't you get out of the car when your sister got out?

A. I was scared. I just didn't know what to do, so I sat there."

The evidence also indicated that Kathy did not put up much resistance to Treat. However, aside from the fact that she was a very young girl who normally would

---

Q. Did he still have the gun out then?

A. Yes.

Q. Did you want to get out?

A. Yes.

Q. Why didn't you get out?

A. I was too scared to move.

Q. Why?

A. Because I am scared to death of guns."

not be expected to resist in the manner of an adult, Treat, according, not only to Kathy's testimony, but to his own, was guilty of the offense of which he was convicted. Ark. Stat. Ann. §41-3401 (Supp. 1971) provides three degrees of rape, first degree, second degree, and third degree. The statute declares one guilty of rape in the third degree when he engages in sexual intercourse with a female less than sixteen years of age and it provides that one is guilty of rape in the second degree when he engages in sexual intercourse with a female less than fourteen years of age (and the offense is committed whether or not the female consents). The punishment for second degree rape is three to twenty-one years imprisonment. Accordingly, the evidence established clearly that he was at least, guilty of an attempt to commit this offense. The penalty for assault with intent to rape is three to twenty-one years imprisonment.[3]

In addition, we have held that recantation by a witness for the state of a portion of his or her testimony does not entitle the defendant to a new trial where such change does not render a different verdict probable, or unless the trial court is satisfied that the recanting testimony is true; further, the granting or denying of a new trial on the basis of newly discovered evidence is largely in the discretion of the trial court and unless the discretion is manifestly abused, the trial court's action will be upheld, *Clayton* v. *State*, 186 Ark. 713, 55 S. W. 2d 88. See also *Cooper* v. *State*, 246 Ark. 368, 438 S. W. 2d 681.

It is urged that the court erred in refusing to permit appellant to cross-examine Kathy as to her prior chastity, or lack of it. Appellant argues that sperm was found inside the prosecuting witness, and that since the jury only found Treat guilty of assault with intent to rape, this was an indication that she had had intercourse with some other person just prior to the events herein set out. We do not agree that error was committed. In the first place, there is evidence, as previously set out, of a

[3]Ark. Stat. Ann. §41-607 (Repl. 1964).

completed sexual act between the parties. In the next place, Criminal Procedural Rule I was never devised to be used as a substitute for appeal, and this allegation (which incidentally raises no question of violation of a constitutional right), if thought to contain merit, could have been set forth by appeal from the original conviction. In addition, Kathy was placed on the stand in the post-conviction hearing by appellant, and certainly was not a hostile witness.

Finally, it is contended that the court erred in not setting aside the plea of guilty to the charge of kidnapping, it being argued that the negotiated plea of guilty to this offense was brought about by the untrue testimony of the prosecuting witness which had been responsible for his conviction of assault with intent to rape; in other words, if he had not been found guilty by the jury, he would not have entered the plea of guilty. We find no merit in this contention. The record reflects that no complaint was made by appellant concerning his representation and that the attorney who originally represented him explained thoroughly the effect of the plea of guilty to the charge; further, that the attorney, who is incidentally a capable and experienced attorney, also discussed the plea with Treat's family. The fact that the pistol was not held on Kathy the entire time does not preclude appellant's guilt on the charge of kidnapping. Admittedly, the pistol was drawn on this young girl who testified that she did not get out of the automobile because she was afraid. We agree with the trial court that the acts mentioned constituted the offense, and though it has no bearing on the legal question involved, it is noted that it was ordered that the sentence given under the plea of guilty was to run concurrently with the sentence rendered in accordance with the jury verdict.

We find no merit in any of the contentions raised.

Affirmed.